UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:20-CR-23-KAC-HBG-1 |
| | ) |
| FAYTHE ELAINE HEAD, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This case is before the Court on Defendant Faythe Elaine Head's "Motion for Compassionate Release" [Doc. 55], "Supplement to Motion . . ." [Doc. 58], a second "Supplement" [Doc. 63, *sealed], and a third "Supplement" [Doc. 68, *sealed]. Approximately seven (7) months ago, the undersigned sentenced Defendant to a total term of ten (10) months imprisonment, with the first half to be served on home detention and the second half to be served incarcerated in a Bureau of Prisons ("BOP") facility [*See* Doc. 51 at 2]. Defendant's five-month term of incarceration is scheduled to begin on February 7, 2022 [*See generally* Doc. 64]. Defendant, who is seventy-nine (79) years old, [Doc. 38 at 3], underwent an emergency triple bypass surgery on December 13, 2021, [*see* Doc. 57 at 9; Doc. 58 at 1]. The emergency surgery left her unable to bathe herself, dress herself, or prepare food for herself [*See* Doc. 58 at 2]. Defendant cannot lift her body, and her "ability to communicate her thoughts" is altered from the surgery [*Id.*]. Under 18 U.S.C. § 3582(c)(1)(A), Defendant moves the Court to modify her term of imprisonment [*See* Docs. 55 at 3, 58 at 3]. In light of the COVID-19 pandemic and the unique medical circumstances present here, the Court modifies Defendant's term of imprisonment.

I.      *Background*

On March 3, 2020, a Grand Jury indicted Defendant on four counts, including Count One, conspiracy to defraud the United States in violation of 18 U.S.C. § 371 [Doc. 1].[1]  Defendant pleaded guilty to Count One on December 9, 2020 [Doc. 34].  On June 25, 2021, the Court sentenced Defendant to a total term of ten (10) months imprisonment to be followed by two (2) years of supervised release [*See* Doc. 51].  The term of imprisonment consisted of five (5) months home detention, to be served first, and five (5) months incarceration, "commenc[ing] no sooner than January 15, 2022" [*Id.* at 2; *see also* Doc. 54 at 32].[2]  Having completed the first half of the ten-month sentence, Defendant was scheduled to self-report for incarceration at a BOP facility on January 14, 2022 [*See* Doc. 57 at 2 ("Defendant is scheduled to complete her five-month term of home detention on December 22, 2021."); *see also* Doc. 58 at 3].  Her Probation Officer reported that she has abided by the conditions of home detention.

On December 7, 2021, Defendant initially moved the Court to (1) reduce or modify her sentence under 18 U.S.C. § 3582(c)(1)(A) or (2) further delay her designation date because she was providing end-of-life care to her husband [Doc. 55 at 3].  The Government opposed Defendant's motion on that basis [*See* Doc. 57].  However, Defendant no longer seeks a modification on that basis [*See* Doc. 58 at 2-3].  Instead, on or about December 13, 2021, Defendant, "underwent a heart catheter procedure" and "had a triple bypass surgery" [*Id.* at 1].

---

[1] Defendant's husband, Frank Rogers, was also charged in the Indictment [Doc. 1].  On October 26, 2020, the Court issued an "Order" [Doc. 27] granting the Government's "Motion to Dismiss" [Doc. 22] the charges against Codefendant Rogers because "the prosecution of [his] case no longer serve[d] the ends of justice" given his diminished mental capacity [*Id.*]
[2] The Court fashioned a unique sentence with Defendant's custodial term starting with home detention because Defendant was providing critical end-of-life care to her husband [Doc. 54 at 30 ("The severity of the underlying conduct and the unique circumstances posed by Ms. Head providing end-of-life care to Mr. Rogers makes this case unique."); *see also*, *id.* at 27-31]. *See* 18 U.S.C. § 3553(a).

Defendant "was discharged from the hospital on December 20, 2021," and her husband died a day later [*Id.*].

"[T]he recovery time for . . . [Defendant's] surgery is significant" [*Id.* at 2]. The emergency surgery left her unable to bathe herself, dress herself, or prepare food for herself [*Id.*]. Defendant cannot lift her body, and her "ability to communicate her thoughts" is altered from the surgery [*Id.*]. As of December 29, 2021, Defendant was residing with, and completely reliant on the care provided by, a friend and that friend's family [*Id.*; *see also* Doc. 66-3, *sealed]. Given the recency of Defendant's surgery and the ongoing COVID-19 pandemic, the Court did not receive medical records from Defendant's surgery until January 10, 2022 [Doc. 63, *sealed]. In the interim, the United States Probation Office separately verified the medical conditions and challenges presented as bases for Defendant's requested relief.[3] On January 11, 2022, the Court extended Defendant's self-report date [Doc. 64].

On January 20, 2022, Defendant's counsel notified the Court and counsel for the United States that Defendant tested positive for the coronavirus and that the disease presents additional complications for Defendant's recovery. On January 26, 2022, the Court received supporting documentation verifying Defendant's diagnosis, [Doc. 68-1 at 1, *sealed], and further detailing the complications it presents for her recovery [*See* Doc. 68, *sealed]. Defendant continues to exhibit symptoms of infection, is largely immobile, and is very weak [*Id.* at 1-2, *sealed]. Out of necessity, any post-surgery rehabilitation appointments and home care are on hold while

---

[3] The Government correctly notes that initially "the Court could deny [Defendant's] motion" because she "offered no documentation about her current physical condition or her anticipated recovery for her recent triple bypass surgery" [Doc. 59 at 1 (citing *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021)]. Such action, however, would be inappropriate here. Defendant was under the supervision of the United States Probation Office, and Defendant's supervising officer verified the information presented to the Court. Further, Defendant promptly submitted the relevant supporting documentation.

3

Defendant is infected [Doc. 68-3 at 1, *sealed]. Defendant is scheduled to self-report for service of her term of incarceration on February 7, 2022 [Doc. 64].

Defendant seeks modification of her sentence so she may recover from surgery "with the assistance of her doctors and others" who can provide the "continuous/total care" she requires at her age [Doc. 58 at 2-3]. The Government "opposes compassionate release," arguing that "relieving defendant from the custodial portion of her sentence would be inconsistent with the totality of the § 3553(a) factors" and that BOP "is presumptively capable of providing whatever medical care defendant requires, now and in the future" [Doc. 59 at 2-3].

II. *Discussion*

Generally, a district court "does not have the authority to change or modify [a] sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013). 18 U.S.C. § 3582(c)(1)(A) provides narrow circumstances under which the Court "may modify a term of imprisonment [after] it has been imposed." As a threshold matter, the individual must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [individual's] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"[4] 18 U.S.C. § 3582(c)(1)(A). If that threshold requirement is met, a district court may reduce a sentence where the Court finds that (1) "extraordinary and compelling reasons warrant a sentence reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the Section 3553(a) factors, to the extent they apply, support a reduction. *United States v. Elias*, 984

---

[4] The Parties agree that the threshold requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied in light of the specific realities unique to this matter [*See* Doc. 57 at 3 ("The United States agrees that the statutory exhaustion requirement has been satisfied, because defendant is not yet in [BOP] custody, so the [BOP] will not seek compassionate release on her behalf.")].

4

F.3d 516, 518 (6th Cir. 2021) (internal quotations omitted).  Here, there is no specific applicable Sentencing Commission policy statement that binds the Court because Defendant—not the BOP— filed her compassionate release motion.  *See id.* at 519.  Without a binding policy statement, "district courts have discretion to define 'extraordinary and compelling' on their own initiative," bounded by applicable precedent.  *See id.* at 519-20 (citations omitted).

In light of the ongoing COVID-19 pandemic, Defendant's emergency triple bypass surgery, current infection, and inability to undertake even basic self-care for a "significant" period of time constitute "extraordinary and compelling reasons" to modify her term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A).  Defendant's recent heart surgery and significant post-operative limitations evidence an inability to provide even basic self-care within, or without, a BOP facility. The dangers presented by these serious medical limitations and challenges are amplified in the environment of a pandemic with an infected Defendant who is seventy-nine (79) years old.

The relevant Section 3553(a) factors also support a modification.  To date, Defendant has served half of her ten-month term of imprisonment, abiding by the conditions of her home detention [*See* Doc. 55 at 3].  *See* 18 U.S.C. § 3553(a)(1).  Defendant committed an undoubtedly serious offense over a period of time [Doc. 57 at 1].  But her inability to provide basic self-care and communicate her thoughts following emergency heart surgery indicates that a modified sentence to include a "special term" of supervised release with a home detention condition would provide just punishment, adequately deter Defendant, and protect the public from any further crimes of Defendant.  *See* 18 U.S.C. § 3553(a)(2).  Modification is also appropriate considering the "kinds of sentence and the [applicable advisory] sentencing range" and the pertinent Sentencing Commission policy statements.  *See* 18 U.S.C. § 3553(a)(4)-(5); *see e.g.*, U.S.S.G. § 5H1.1 ("Age may be a reason to depart downward in a case in which the defendant is elderly

5

and infirm and where a form of punishment such as home confinement might be equally efficient and less costly than incarceration"); *see e.g.*, U.S.S.G. § 5F1.2 ("Home detention may be imposed . . . only as a substitute for imprisonment.").[5]  Therefore, after considering the applicable Section 3553(a) factors, a modification of Defendant's sentence under Section 3582(c)(1)(A) is appropriate in this unique case.

Accordingly, the Court **GRANTS** Defendant's motion for compassionate release [Doc. 55], as modified by her supplement [Doc. 58], as set forth below.  Under 18 U.S.C. § 3582(c)(1), Defendant's previously-imposed sentence of five (5) months imprisonment is reduced to zero (0) months imprisonment.  If this sentence is less than the amount of time Defendant has already served in BOP custody, the sentence is reduced to time served.  Under 18 U.S.C. § 3582(c)(1)(A), Defendant is ordered to serve a "special term" of supervised release of five (5) months (not to exceed the unserved portion of the original term of incarceration in a BOP facility).  Defendant's previously imposed conditions of supervised release following incarceration apply to the "special term" of supervision, as does the following extra condition:

1. During the "special term" of supervised release, you are restricted to your place of residence (or other verified residence as approved by the probation officer), at all times except for employment and other activities approved in advance by the probation officer (i.e., "Home Detention").  You shall maintain a telephone at the residence without any "call forwarding," "Caller ID," "call waiting," modems, answering machines, cordless telephones or other special services for the above period.  You shall answer any phone call from the Probation Office and comply with any home visit, virtual or in-person, verifying your Home Detention is being served at the approved residence.  In addition, you shall be monitored by other location monitoring technology as directed by and at the discretion of the Probation Office and shall observe the rules specified by the Probation Office. You shall pay for this service.

---

[5] Guidelines Section 5H1.1 was not applicable to Defendant at sentencing for the reasons stated on the record during her sentencing hearing [*See* Doc. 54 at 17-22].  However, given the "exceptional and compelling" post-sentencing events, the policy statement is now pertinent.

This "special term" of supervision shall be followed by Defendant's original two-year term of supervised release. An amended judgment will follow the entry of this Opinion and Order.

IT IS SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge